**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MIKE SPANIK,

    Plaintiff,

v.                                                                                                                Case No. _____

ALLY FINANCIAL, INC.,

    Defendant.

---

Plaintiff Mike Spanik sues Defendant Ally Financial, Inc., and alleges:

## **Introduction**

1. This is an action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and to prevent abusive "robocalls."

3. The TCPA's sponsor, Senator Hollings, urged Congress to pass the TCPA stating, "[t]hese machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop." 137 Cong. Rec. at S16205. Describing the specific consumer interests the TCPA was intended to protect, Senator Hollings said: "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man." 137 Cong. Rec. at S16205.

4. "Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

1

5. Yet, still today, according to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints [the FCC] receive[d]. Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

6. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller*, 845 F.3d 303, 305-06 (7th Cir. 2017).

**Jurisdiction, Venue and Parties**

7. This Court has original jurisdiction over Plaintiff's claim arising under the TCPA pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims, as they arise from a common nucleus of operative fact, and form part of the same case or controversy. 28 U.S.C. § 1367.

9. Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Florida, this suit arises out of Defendant's specific conduct with Plaintiff in Florida, and Plaintiff was injured in Florida.

10. Venue is appropriate in the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1391, as the events giving rise to Plaintiff's claims occurred in Flagler County, Florida.

11. Plaintiff is a natural person, and citizen of the State of Florida, residing in Flagler County, Florida.

12. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Plaintiff is a "consumer" as defined by Florida Statue § 559.55(8).

14. Defendant Ally Financial, Inc.'s principal place of business is located at 500 Woodward Avenue, Detroit, Michigan 48226, and conducts business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

15. Defendant is a "debt collector" as defined by Florida Statutes § 559.55(7).

16. The debt that is the subject matter of this Complaint is a "debt" as defined by Florida Statute § 559.55(6).

## General Allegations

17. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (386) ***-6030, and was the called party and recipient of Defendant's calls.

18. Defendant placed more than 60 calls to Plaintiff's cellular telephone in an attempt to collect a debt.

19. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following telephone numbers: (833) 669-2847, (855) 306-6938, and (888) 611-6904.

20. Some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" as specified by 47 U.S.C. § 227(a)(1).

21. Sometimes when Plaintiff answers Defendant's calls to his cell phone, he hears a pause before he is connected to a live agent.

22. A pause in the phone call before being connected to a live agent is indicative of an automatic telephone dialing system. *See, e.g., Cummings v. Rushmore Loan Mgmt. Serv.*, No. 8:17-cv-1652-T-33MAP, 2017 U.S. Dist. LEXIS 177619, at *2 (M.D. Fla. Oct. 26, 2017) (explaining that a pause before a live person comes on the line is indicative of an ATDS); *France v. DiTech Fin., LLC*, No. 8:17-cv-3038-T-24MAP, 2018 U.S. Dist. LEXIS 58711, at *19-20 (M.D. Fla. Apr. 6, 2018) (same).

23. Sometimes when Plaintiff answers Defendant's phone calls to his cell phone, an artificial or prerecorded voice plays.

24. The use of an artificial or prerecorded voice is indicative of an automatic telephone dialing system. *See, e.g., Cummings v. Rushmore Loan Mgmt. Serv.*, No. 8:17-cv-1652-T-33MAP, 2017 U.S. Dist. LEXIS 177619, at *2 (M.D. Fla. Oct. 26, 2017) (explaining that a the use of an artificial or prerecorded voice during the call is indicative of an ATDS); *France v. DiTech Fin., LLC*, No. 8:17-cv-3038-T-24MAP, 2018 U.S. Dist. LEXIS 58711, at *19-20 (M.D. Fla. Apr. 6, 2018) (same).

25. Plaintiff received a large number of phone calls from Defendant, often multiple times per day and up to 5 times per day.

26. A large volume and frequency of calls is indicative the calls were made from an ATDS. *See, e.g., Cummings v. Rushmore Loan Mgmt. Serv.*, No. 8:17-cv-1652-T-33MAP, 2017 U.S. Dist. LEXIS 177619, at *2 (M.D. Fla. Oct. 26, 2017) (explaining that a large number and frequency of calls is indicative of an ATDS).

27. Sometimes when Plaintiff answered calls from Defendant to his cell phone, he would hear nothing, only dead air.

28. Hearing dead air due to an abandoned call is indicative of the use of an ATDS. *See De Los Santos v. Millward Brown, Inc.*, 2014 U.S. Dist. LEXIS 88711, 2014 WL 2938605, at *3 (S.D. Fla. June 30, 2014) ("Plaintiff provides additional facts, such as hearing 'dead air,' a signature of autodialing.") (citing FCC, Consumer Guide: Unwanted Telephone Marketing Calls 2 (2013), http://www.fcc.gov/cgb/consumerfacts/tcpa.pdf ("The use of autodialers ... often results in abandoned calls-hang-ups or 'dead air.'")); *Gulisano v. Cambece Law Office, PC*, No. 15-81378-CIV-DIMITROULEAS/S, 2016 U.S. Dist. LEXIS 184129, at *9 (S.D. Fla. Aug. 8, 2016) (same).

29. On several occasions since Defendant's campaign of phone calls began, Plaintiff instructed Defendant's agents to stop calling his cellular telephone.

30. For example, on or around May 12, 2019, Plaintiff answered a call from Defendant to the aforementioned cellular telephone number. Plaintiff spoke to Defendant's agent and told the agent he did not want Defendant to call him again. But the calls did not stop.

31. Each subsequent call Defendant made to Plaintiff's aforementioned cellular telephone number was willful or knowing and made without Plaintiff's "express consent."

32. Despite Plaintiff clearly and unequivocally revoking any consent Defendant may have believed it had to call Plaintiff on his cellular telephone, Defendant continued to place automated calls to Plaintiff.

33. Again, in or around June 2019, Plaintiff answered a call from Defendant to the aforementioned cellular telephone number. Plaintiff spoke to Defendant's agent and told Defendant to stop calling. But the calls still did not stop.

34.     Plaintiff's repeated conversations with Defendant's agents over the telephone, wherein he demanded cessation of calls, were in vain as Defendant continued to bombard him with automated calls unabated.

35.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can be reasonably expected to harass.

36.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

37.     Defendant has other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

38.     Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requests to stop.

39.     Defendant has had numerous complaints from consumers across the country asking to not be called; however, Defendant continues to call the consumers.

40.     Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

41.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

42.     Not a single call placed by Defendant to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

43.     From each and every call Defendant placed to Plaintiff's cellular telephone without consent, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

44. From each and every call Defendant placed to Plaintiff's cellular telephone without consent, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendant's calls.

45. From each and every call Defendant placed to Plaintiff's cellular telephone without consent, Plaintiff suffered the injury of unnecessary expenditure of his time, nuisance and annoyance. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

46. Each and every call Defendant placed to Plaintiff's cellular telephone without consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

47. Each and every call Defendant placed to Plaintiff's cellular telephone without consent where a voice message was left, occupied space in Plaintiff's telephone or network.

48. Each and every call Defendant placed to Plaintiff's cellular telephone without consent resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

49. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress and aggravation from having to deal with Defendant's numerous unwanted phone calls.

## COUNT I
**(Violation of the TCPA)**

50. Plaintiff restates and incorporates herein his allegations in paragraphs 1 through 49 as if fully set forth herein.

51. Defendant knowingly or willfully violated the TCPA with respect to Plaintiff, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls to stop.

52. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

53. Plaintiff restates and incorporates herein his allegations in paragraphs 1 through 49 as if fully set forth herein.

54. At all times relevant to this action Defendant was subject to and required to abide by the laws of the State of Florida, including Florida Statute § 559.72.

55. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

56. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

57. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

*s/ Joshua R. Kersey*
Joshua R. Kersey
Florida Bar No. 87578
MORGAN & MORGAN, PA
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 225-6734
Fax:    (813) 222-2490
JKersey@ForThePeople.com
JessicaK@ForThePeople.com
*Attorney for Plaintiff*